IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

JORDAN JOSEPH SZUKICS,                )
                                      )
            Plaintiff                 )      1:19-CV-00379-RAL
                                      )
      vs.                             )
                                      )      RICHARD A. LANZILLO
PSYCHOLOGIST KRISTEN MCHENRY,         )      UNITED STATES MAGISTRATE JUDGE
JERI SMOCK, HEALTH CARE               )
ADMINISTRATOR; SUPERINTENDENT         )      MEMORANDUM OPINION ON
MICHALE CLARK, DEPUTY PAUL            )      DEFENDANTS' MOTION FOR SUMMARY
ENNIS, CORRECTIONAL OFFICER           )      JUDGMENT
DOXY, SGT. OBRIAN,                    )
                                      )      IN RE: ECF NO. 85
                                      )
            Defendants                )
                                      )

      Plaintiff Joseph Jordan Szukics ("Szukics"), an inmate at the State Correctional

Institution at Albion ("SCI-Albion") commenced this action pursuant to 42 U.S.C. § 1983 on

December 27, 2019.  *See* ECF No. 1.  Several employees of the Pennsylvania Department of

Corrections ("DOC") were named as defendants.  *Id.*  Szukics filed an amended complaint on

March 23, 2021, naming Superintendent Michael Clark[1], Deputy Superintendent Paul Ennis,

prison psychologist Kristen McHenry, health care administrator Jeri Smock, and Corrections

Officers Doxy and O'Brian as defendants.  *See* ECF No. 60, p. 1.

      Thereafter, Defendants Smock, Ennis, and Clark filed a motion to dismiss, arguing that

Szukics' amended complaint failed to allege an Eighth Amendment failure to protect claim

against them.  *See* ECF No. 63, p. 6.  Szukics did not oppose the dismissal of his Eighth

---

[1] Szukics misidentifies this defendant as "Michale Clark."

Amendment claim against these Defendants and, accordingly, the Court granted their motion. *See* ECF No. 72.

The remaining Defendants (Doxy, McHenry and O'Brian) answered the amended complaint (ECF No. 75) and a period of discovery ensued. *See* ECF No. 76 (case management order). Upon the conclusion of discovery, the Defendants filed the instant motion for summary judgment. *See* ECF No. 85. Szukics filed a response in opposition (ECF No. 91) and the matter is now ripe for disposition.

For the reasons set forth below, the Court will grant the motion and enter judgment in favor of the Defendants Doxy, McHenry, and O'Brian.

I.    Background

Szukics alleges that on May 13, 2019, Doxy and O'Brian ordered him to leave an "unauthorized area" and return to his cell. ECF No. 60, p. 5. Szukics states that he complied with the order to return to his cell, but that Doxy and O'Brian followed him into the cell where they proceeded to put Szukics in handcuffs, slam him into a wall, throw him to the cell floor, and beat him unconscious. *Id.* Szukics also alleges that Doxy and O'Brian then "put a spit hood on me and put me in a restraint chair," despite Szukics' protest that he "never spit on anyone" and "did not need the restraint chair." *Id.* Szukics was apparently taken to the medical department where he claims medical personnel refused to examine him. *Id.*

The amended complaint alleges that McHenry visited Szukics and that he told her he was having suicidal thoughts. *Id.* at p. 6. Szukics requested placement in a psychiatric observation cell ("POC") but McHenry refused to recommend that placement. *Id.* Szukics "then proceeded to cut my left forearm (sic) which left a permanent scar." *Id.* Szukics alleges that when McHenry

returned to visit him, he showed her his arm and again asked for placement in a POC. *Id.*

McHenry again refused to authorize a POC placement. *Id.* Szukics then hung himself in his cell.

*Id.* Unnamed prison personnel found Szukics unconscious and took him to a local hospital

where he received treatment. *Id.*

Szukics claims that Doxy and O'Brian violated his Eighth Amendment rights on May 13,

2019, by using excessive force against him and that McHenry violated his Eighth Amendment

rights later that same day by failing to provide necessary medical care.

II.     Legal Standards of Decision

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere

existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A

disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of

the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers,

Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477

U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283,

1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court

must view the record and all reasonable inferences to be drawn therefrom in favor of the

nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

III.   Discussion and Analysis

    A. The remaining Defendants are entitled to summary judgment because the record establishes that Szukics did not exhaust his administrative remedies as to the events of May 13, 2019.

Defendants move for summary judgment on the basis that Szukics failed to exhaust his available administrative remedies with respect to his remaining Eighth Amendment claims against them as required by the Prison Litigation Reform Act ("PLRA"). *See* ECF No. 85, ¶ 10. They argue that Szukics did not file a timely grievance concerning any matter upon which he

bases those claims. *See* ECF No. 87. As explained below, the Court agrees. The record demonstrates that Szukics failed to file a timely grievance relating to the events of May 13, 2019. This failure bars Szukics' Eighth Amendment claims based on those events.

Under the PLRA, prisoners are required to first exhaust all administrative remedies before bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law. *See* 42 U.S.C. § 1997e(a). Specifically, the Act provides that

> No action shall be brought with respect to prison conditions under Section1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion, as a precondition for bringing suit, is a " 'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'" *See Small v. Camden County*, 728 F.3d 265, 270 (3d Cir. 2013). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "A prisoner must exhaust all available administrative remedies even where the relief sought, such as monetary damages, cannot be granted through the administrative process, as long as the grievance tribunal has authority to take some responsive action." *Singleton v. Brittain*, 2021 WL 1340135, at *3 (M.D. Pa. Apr. 9, 2021) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)).

The PLRA does not define the applicable procedural rules for properly exhausting administrative remedies. Instead, those are defined by the prison grievance process itself. *Id.* Therefore, compliance with prison grievance procedures is all that is required by [§ 1997e(a)] to 'properly exhaust.'" *See Jones v. Bock*, 549 U.S. 199, 218 (2007); *Drippe v. Tobelinski*, 604

F.3d 778, 781 (3d Cir. 2010) ("[W]hether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures."). The burden of proving non-exhaustion lies with the defendants asserting the defense. *Jones*, 549 U.S. at 212, 216–17. In evaluating the "threshold" issue of exhaustion, a court's inquiry is twofold: first, courts look at whether the inmate "compli[ed] with the prison's specific grievance procedures" and second, whether those procedures were available to the inmate. *See Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (quoting *Drippe*, 604 F.3d at 781, and *Small*, 728 F.3d at 269-71).

In Pennsylvania, the Department of Corrections ("DOC") has established an administrative grievance procedure, DC-ADM 804. *See* DC-ADM 804, Inmate Grievance System, Pa. Dept. of Corrs., available at https://www.cor.pa.gov/About% 20Us/Documents/DOC% 20Policies/804% 20Inmate% 20Grievances.pdf. Under that procedure, a prisoner must first submit a timely written grievance for review by the facility manager or regional grievance coordinator within fifteen days from the date of the incident. *See id.* DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals directly involved in the events," and "shall specifically state any claims he wishes to make concerning violations of Department directives, regulations, court orders, or other law." *See id.* The inmate should receive a response within ten business days. Next, the prisoner must submit a timely written appeal to an intermediate review level within ten working days. *Id.* Again, a response should be received within ten working days. *Id.* Finally, the inmate must submit a timely appeal to the DOC's Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days. *Id.* The inmate should receive a final determination regarding his or her grievance in writing within thirty days. *Id.* "A proper appeal to final review must include . . . a legible copy of the Inmate Appeal to the Facility Manager,"

and failure to provide that documentation "may result in the appeal being dismissed." *See id*.
"An inmate must exhaust all three levels of review and comply with all procedural requirements
of the grievance review process" in order to fully exhaust a grievance. *See Stroman v. Wetzel*,
2019 WL 931653, at *3 (M.D. Pa. Feb. 26, 2019); *see also Garcia v. Kimmell*, 381 Fed. Appx
211, 213 n.1 (3d Cir. 2010) ("Proper exhaustion in Pennsylvania requires completion of a three-
part procedure; initial review, appeal, and final review.").

Although Szukics filed a grievance (Grievance No. 821034) regarding certain of the
events of May 13, 2019, the record establishes that he did not do so until on September 3, 2019,
well beyond the fifteen-business day limitation of DC-ADM 804.  Defendants properly support
the untimeliness of Grievance No. 821034 by producing the relevant grievance record and a
declaration of Keri Moore, the Assistant Chief in the SOIGA office. *See* ECF No. 88-1, p. 195.
Moore attests that the Automated Inmate Grievance Tracking System database and the files for
all grievances submitted by Szukics while incarcerated at SCI-Albion confirm that between
April 15, 2019 and April 3, 2020, Szukics filed six grievances, and that only Grievance No.
821034 relates to any events described in his Amended Complaint. *See id*, p, 197, ¶ 11.  Szukics
does not dispute the accuracy of Moore's declaration.

As noted, Grievance No. 821034 was originally submitted on September 3, 2019.  The
Facility Grievance Coordinator rejected the grievance as untimely the following day. *See* ECF
No. 88-1, p. 192.  The Facility Grievance Coordinator added that the grievance was rejected
because it was illegible, not understandable, and failed to state that Szukics was personally
affected by a DOC policy or action. *Id*.  The next day, September 4, 2019, Szukics re-submitted
the same grievance, No. 821034, alleging that on May 13, 2019, he was "beat unconscious [and]
got 2 black eyes." ECF No. 88-1, p. 188.  In addition, Szukics' Grievance No. 821034 raised the

7

following claims: a daily violation of his Eighth Amendment rights "since May 1, 2019,"

medical neglect since February 7, 2019, relating to a head injury and a thumb injury that took

place on or about February 7, 2019, "mental health neglect," and "physical, verbal abuse" that

took place on or about May 1, 2019, and May 13, 2019.[2]  *See id.* at pp. 187-88.

The Facility Grievance Coordinator again denied Szukics' grievance on September 9,

2019, because (1) it was not submitted within fifteen workings days after the events on which it

was based, (2) it exceeded page limitations outlined in the policy, and (3) it contained more than

one claim.  *Id.*, at p. 186.  Szukics filed an appeal to the Facility Manager on September 20,

2019.[3]  ECF No. 88-1, p. 180.  On October 16, 2019, the Facility Manager upheld the initial

review response.  *Id.*, pp. 178-79.  On November 7, 2019, the SOIGA dismissed Szukics'

grievance.  *Id.*, p. 176.

Szukics offers no explanation for his delay in filing his grievance, although the Court

notes that his grievance includes language which, at first glance, could implicate the "continuing

violation" doctrine.  He states that his "8th Amendment [rights were] *constantly being violated*

*daily since May 1, 2019* along with medical neglect since February 7, 2019."  ECF No. 88-1, p.

187.  The "continuing violation doctrine" applies to toll the submission of a grievance on a

deliberate indifference claim where a medical condition is ongoing.  *In v. Stroup*, 2021 WL

5922331, at *6 (W.D. Pa. Dec. 15, 2021) (citing *Fulton v. Hakinberry*, 2015 WL 5098751, at *4

(W.D. Pa. Aug. 31, 2015)).  It is does not extend to claims that are "based on discrete events."

---

[2] Although not submitted until September 4, 2019, this four-page grievance specifically complains of medical care Szukics received on February 7, 2019, February 9, 2019, April 7, 2019, and of "physical abuse" from "2 guards" on May 1, 2019, and May 13, 2019.  *See* ECF No. 88-1, p. 188.  The grievance also complains of verbal abuse inflicted on May 1, 2019.  He lists Defendants McHenry, O'Brian, and Doxy, among others, as responsible.  *Id.*

[3] As noted in the Facility Manager's Response, Szukics mistakenly filed an appeal to the SOIGA office first.  *See* ECF No. 88-1, p. 178.

*Id.* Here, Szukics' grievance relates to several discrete events: an injury to his head and thumb on February 7, 2019; x-rays taken on February 9, 2019; and hospital treatment including additional x-rays on April 9, 2019. *See* ECF No. 88-1, p. 188. Szukics needed to grieve each of these distinct events within fifteen days after it occurred. And, in any event, Szukics' filing of Grievance No. 821034 on September 3, 2019, was still untimely as to any of matters listed in that grievance.[4]

Because Szukics did not file a timely grievance regarding any matter asserted against the remaining Defendants in this action, he has not exhausted his administrative remedies as to any claim against them. This finding, however, does not necessarily end the inquiry. The Court must also consider whether the applicable administrative remedies were "available" to Szukics for his unexhausted claims.

The United States Supreme Court outlined the three instances in which remedies would not be "available" such that exhaustion may be excused: (1) when an administrative procedure "operates as a simple dead end with officers unable or consistently unwilling to provide relief to aggrieved inmates;" (2) where the administrative remedies are so unclear that "no ordinary prisoner can make sense of what it demands;" and (3) where prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 642-43 (2016); *see also Rinaldi*, 904 F.3d at 266-67. "[O]nce the defendant has established that the inmate failed to resort to administrative remedies,

---

[4] Szukics alleges that he did file a grievance relating to the treatment he received on April 7, 2019, three days before the events at issue in this case. Although Szukics does not identify this grievance by number, the record reveals that Grievance No. 796630 was received by prison officials on April 15, 2019. *See* ECF No. 88-1, p. 174. And although Szukics states he never received a response to this grievance, the unchallenged DOC records indicate that he did not exhaust this grievance by appealing it to the SOIGA. *Id.*

the onus falls on the inmate to show that such remedies were unavailable to him." *Rinaldi*, 904 F.3d at 268.

Here, Szukics does not argue or point to any evidence to suggest that that any of the three "unavailability" circumstances impeded him from filing a timely grievance. Put another way, Szukics does not contend that the Defendants did anything to interfere with his ability to file a timely grievance.[5] Indeed, he has utilized the grievance process on many occasions, but failed to do so within the applicable time limitation as to any claim remaining in this action. The record includes no evidence to support an inference that the grievance procedure was unavailable to Szukics. No genuine issue of material fact remains concerning Szukics' failure to exhaust available administrative remedies, as § 1997e(a) required him to do before filing suit as to all issues raised in the amended complaint. The remaining Defendants are, therefore, entitled to judgment as a matter of law. Accordingly, the Court will grant the Defendants' motion for summary judgment.

IV.    Conclusion

For the foregoing reasons, the Court will grant the Defendants' motion for summary judgment based on Szukics' failure to exhaust his available administrative remedies. An appropriate order will issue separately.

---

[5] Indeed, Szukics acknowledges in response to the Defendants' summary judgment motion that "there is (sic) no other attachments being submitted into this case. The Courts have received all materials, affidavits, and all declarations that the Plaintiff has to offer in moving forward in the claim." ECF No. 91, p. 1.

DATED this 7th day of September, 2022.

BY THE COURT:

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE